## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA BALLERINI,
TIERRA EMERSON,
on behalf of themselves
and similarly situated individuals,

        Plaintiffs,        Case No.

v.

                              Hon.

CENTENE CORPORATION,

        Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiffs*
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out of this transaction or occurrence alleged in the Complaint.

### COMPLAINT AND JURY DEMAND

Plaintiffs Lisa Ballerini and Tierra Emerson ("Plaintiffs"), on behalf of themselves and similarly situated individuals, by and through HURWITZ LAW PLLC, state the following for their Complaint and Jury Demand against Defendant Centene Corporation ("Defendant"):

# INTRODUCTION

1.	There is no pandemic exception to the protections afforded by Title VII of the Civil Rights Act of 1964 ("Title VII") and Michigan's Elliot-Larsen Civil Rights Act ("ELCRA"). Defendant deliberately flouted law when it terminated Plaintiffs' job interviews after learning they would require religious accommodations to be exempt from Defendant's COVID-19 vaccine mandate. Instead of engaging with Plaintiffs in the spirit of "bilateral cooperation," Defendant blanketly refused to explore whether religious accommodation was possible. Accordingly, this class action lawsuit seeks compensatory damages, punitive damages, and reasonable attorney's fees for all individuals who applied for job opportunities with Defendant and were removed from consideration once they informed Defendant that they held religious beliefs that prevented them from receiving the COVID-19 vaccine.

# PARTIES AND JURISDICTION

2.	Plaintiff Ballerini is an individual residing in Oxford, Michigan, which is located in Oakland County.

3.	Plaintiff Emerson is an individual residing in Chesterfield, Michigan, which is located in Macomb County.

4.     "Centene Corporation" is a for-profit healthcare corporation headquartered in St. Louis, Missouri. Defendant also operates in the State of Michigan.

5.     The Eastern District of Michigan has original diversity jurisdiction over Plaintiffs' Title VII of the Civil Rights Act of 1964 claims pursuant to 28 U.S.C. § 1332 because Defendant is now, and at all times mentioned was, a corporation duly organized and existing under the laws of Minnesota, and Plaintiffs are now, and at all times mentioned were, citizens domiciled in the United States in the State of Michigan.

6.     The Eastern District of Michigan has supplemental jurisdiction over Plaintiffs' ELCRA claims pursuant to 28 U.S.C. § 1367.

7.     The matter in controversy exceeds the sum or value of $75,00 exclusive of interests and costs.

8.     Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b)(2) because it is the district in which a substantial part of the events giving rise to Plaintiffs' claims occurred.

9.     Plaintiff Ballerini filed charges of religious and disability discrimination with the Equal Employment Opportunity Commission on March 25, 2022 and received her right to sue letter within the past 90 days.

10. Plaintiff Emerson filed a charge of religious discrimination with the Equal Employment Opportunity Commission on April 22, 2022 and received her right to sue letter within the past 90 days.

## FACTUAL ALLEGATIONS

### COVID-19 and Defendant's Vaccine Mandate

11. Defendant is a publicly traded managed care company. It serves as an intermediary for government-sponsored and privately insured health care programs.

12. Defendant enforced an inflexible vaccine mandate that obligates job-applicants to be vaccinated from COVID-19 regardless of potential work location, remote status, or responsibilities.

13. Defendant's vaccine mandate was absolute; offered no alternatives, such as periodic testing, mask wearing, social distancing.

### Plaintiff Ballerini Applies for a Position with Defendant

14. Plaintiff Ballerini seeks to make daily decisions, including those regarding vaccination and other medical decisions, through prayer and reading scripture.

15. These sincerely held and prayerfully developed religious beliefs preclude Plaintiff Ballerini from taking the COVID-19 vaccine.

16. In or about December 2021, Plaintiff Ballerini applied for a *fully remote* position with Defendant.

17. Talent Advisor Sakiba Delic scheduled a phone interview with Plaintiff Ballerini for December 29, 2021.

18. Ms. Delic assured Plaintiff Ballerini that she could submit a religious accommodation request to Defendant.

19. Ms. Delic informed Plaintiff Ballerini that she had "more than enough experience" for the position.

20. Plaintiff Ballerini earned a second interview the following day.

21. During her second interview, Plaintiff Ballerini was asked why she wanted to leave her old job and work for Defendant.

22. Plaintiff Ballerini responded that even though she thoroughly enjoyed her Case Manager position, she wanted to work for Defendant because she heard great things about Defendant from former co-workers who had been hired there.

23. Plaintiff Ballerini also expressed her belief that the position would be a great fit because she had relevant work experience that would translate well to the role.

24. Plaintiff Ballerini also honestly informed Defendant that she was leaving her previous job because they implemented a vaccine mandate.

25. The two interviewers present, Managers Kelley Lee and Melody Drwal, proceeded to "warn" Plaintiff Ballerini about the "difficult" vaccine mandate at the Company.

26. Plaintiff Ballerini perceived these statements as an effort to convince her to change her mind about needing an accommodation.

27. Plaintiff Ballerini remained steadfast and reiterated her need for an accommodation from any vaccine mandate because her sincerely held religious beliefs precluded her from receiving the COVID-19 vaccination.

28. Ms. Lee's and Ms. Drwal's body language and demeanor visibly changed once she informed them that she needed accommodation from any COVID-19 vaccination mandate.

29. The interview ended shortly after.

30. Plaintiff Ballerini thereafter emailed Ms. Delic, stating: "I really hope [the interview] went well. I'm so excited about this position."

31. On January 11, 2021, Plaintiff Ballerini was informed that she was not selected for the position that she had applied for.

32. Less than a month later, on February 3, 2022, Ms. Delic called Plaintiff Ballerini and informed her that the Company had another job opening.

33. Ms. Delic told Plaintiff Ballerini that she had plenty experience and that another manager was interested.

34. During this phone call, Ms. Delic explicitly warned Plaintiff Ballerini: "Next time, don't tell them why you left [your last employer]. They don't need to know that."

35. Ms. Delic also advised Plaintiff Ballerini during the phone call that she should "tell the hiring manager a different reason [she] was leaving [her previous job]."

36. Plaintiff Ballerini asked Ms. Delic if disclosing her religious convictions during her second interview with Defendant "sealed the deal" with respect to losing out on the last job opportunity.

37. Ms. Delic confirmed that Plaintiff Ballerini was not hired because she left her old job due to the implementation of a Covid-19 vaccine mandate, and responded simply, "Yes."

38. Defendant's refusal to hire Plaintiff constitutes direct evidence of disparate treatment discrimination.

### Plaintiff Emerson Applies for a Position with Defendant

39. Plaintiff Emerson seeks to make daily decisions, including those regarding vaccination and other medical decisions, through prayer and reading scripture.

40. Plaintiff Emerson's sincerely held and prayerfully developed religious beliefs preclude her from taking the COVID-19 vaccine.

41. In or about February 2022, Plaintiff Emerson applied for two positions with Defendant. One of the positions was Program Social Work Specialist, which had a remote option.

7

42. On February 23, 2022, Plaintiff Emerson attended a virtual job fair with the Company.

43. Plaintiff Emerson spoke with Roy Cabrera, a talent attraction manager, via chat, then by phone.

44. During these conversations, Mr. Cabrera confirmed that he had seen Plaintiff Emerson's applications in Defendant's system and that he would forward them to the Company's recruiters for their review.

45. Mr. Cabrera asked Plaintiff Emerson about her former employer, Blue Cross Blue Shield.

46. Plaintiff Emerson disclosed to Mr. Cabrera that she had submitted a religious exemption request for accommodation to Blue Cross' COVID-19 vaccine mandate and that her request was denied, leading to her termination.

47. Mr. Cabrera responded by informing Plaintiff Emerson that Defendant has a vaccine mandate as well, and that he had no idea how their Human Resources department would handle Plaintiff Emerson's request for accommodation.

48. On March 9, 2022, Defendant informed Plaintiff Emerson that "[her] application was not selected to move forward in the process…"

49. The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the job applicant. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that,

consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business.").

50. "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process — a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

51. Defendant did not request nor suggest that Plaintiffs participate in any discussion to determine a fair and legal accommodation before denying their applications for employment.

52. Defendant strictly follows a blanket policy to deny religious accommodation requests.

53. Defendant never indicated to Plaintiffs that accommodating their religious beliefs would pose an undue burden.

54. Defendant declined Plaintiffs' employment applications without ever engaging in the interactive process.

55. Defendant refused to hire Plaintiffs because of their sincerely held religious beliefs.

56. But-for Plaintiffs' vaccination statuses, Defendant would have hired Plaintiffs.

57. Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith. It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children. To many, this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

## CLASS ACTION ALLEGATIONS

58. Plaintiffs assert claims on behalf of the "Putative Class," defined as follows:

> **Class.** All Centene Corporation job applicants who were denied employment because their sincerely held religious beliefs precluded them from receiving the COVID-19 vaccine.

59. **Numerosity.** The Putative Class is so numerous that joinder of all Class members is impracticable.

60. **Typicality.** Plaintiffs' claims are typical of the members of the Putative Class. For all members of the Putative Class, Defendant did not conduct an individualized assessment of potential religious accommodation requests before deciding not to consider them for employment. Instead, Defendant imposed a policy

blanketly denying employment to any potential new hire who would require accommodation from its COVID-19 vaccine mandate. The legal violations suffered by the Plaintiffs are typical to those suffered by other Putative Class members, and Defendant treated Plaintiffs consistent with other Putative Class members in accordance with its standard policies and practices.

61. **Adequacy.** Plaintiffs are adequate representatives of the Putative Class. Plaintiffs' interests are aligned with, and are not antagonistic to, the interests of the members of the Putative Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation.

62. **Commonality.** Common questions of law and fact exist as to all members of the Putative Class and predominate over any questions solely affecting individual members of the Putative Class, including but not limited to:

  a. Whether Defendant imposed a blanket policy denying employment to any potential new hire that required religious accommodation from its COVID-19 vaccine mandate;

  b. Whether Defendant violated Title VII and ELCRA by failing to consider whether members of the Putative Class had sincerely held religious beliefs;

  c. Whether Defendant violated Title VII and ELCRA by failing to consider whether there were reasonable accommodations for

        members of the Putative Class that would not pose an undue burden on Defendant.

    d.    Whether Defendant refused to hire anyone who required religious accommodation to its COVID-19 mandate.

    e.    The proper statutory and punitive damages; and

    f.    The proper form of declaratory relief.

63. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(1) because prosecution of actions by or against individual members of the Putative Classes would result in inconsistent or varying adjudications and create the risk of incompatible standards of conduct for Defendant. Further, adjudication of each individual class member's claim as a separate action would potentially be dispositive of the interest of other individuals not a part to such action, impeding their ability to protect their interests.

64. This case is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant acted or refused to act on grounds that apply generally to the Putative Classes, so that relief is appropriate respecting the Class as a whole.

65. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Putative Class predominate over any questions affecting only individual members of the Putative Class, and because a class action is superior to other available methods of the fair and efficient

adjudication of this litigation. Defendant's conduct described in this Complaint stems from common and uniform policies and practices, resulting in common violations of Title VII and ELCRA. Members of the Putative Class do not have an interest in pursuing separate actions against Defendant, as the amount of each class member's individual claims is small compared to the expense and burden of individual prosecution, and Plaintiffs are unaware of any similar claims brought against Defendant by any members of the Putative Class on an individual basis. Class certification will also obviate the need for unduly duplicative litigation that might result in inconsistent judgments concerning Defendant's practices. Moreover, management of this action as a class action will not present any likely difficulties. In the interests of justice and judicial efficiency, it would be desirable to concentrate the litigation of all Putative Class members' claims in a single forum.

66. Plaintiffs intend to send notice to all members of the Putative Classes to the extent required by Rule 23. The names and addresses of the Putative Class members are available from Defendant's records.

## COUNT I
## VIOLATION OF THE ELCRA, MCL 37.2101, *ET SEQ*.
## RELIGIOUS DISCRIMINATION – FAILURE TO HIRE
## ON BEHALF OF PLAINTIFFS AND SIMILARLY SITUATED INDIVIDUALS

67. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

68. Pursuant to ELCRA, MCL 37.2202(1) it is unlawful for an employer to: "(a) <u>Fail or refuse to hire or recruit</u>, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion[.]; or (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion[.]"

69. Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

70. Simply by failing to engage with Plaintiffs as to the possible reasonable accommodations, Defendant has violated the law.

71. Plaintiffs engaged in protected activity when they requested religious accommodations from Defendant's vaccine mandate.

72. Defendant responded by denying their applications for employment.

73. Defendant failed and refused to hire Plaintiffs due to their sincerely held religious beliefs.

74. Plaintiffs' religious beliefs and protected activity were the causes of Defendant's retaliation and adverse employment action.

75. This violation has harmed and continues to harm Plaintiffs.

## COUNT II
## VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.
## RELIGIOUS DISCRIMINATION–FAILURE TO HIRE
## ON BEHALF OF PLAINTIFFS AND SIMILARLY SITUATED INDIVIDUALS

76. Plaintiffs restate the foregoing paragraphs as set forth fully herein.

77. Title VII declares "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire . . . any individual with respect to [the individual's] compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1).

78. "Religion" is defined to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

79. Defendant refused to hire Plaintiffs because of their sincerely held religious beliefs, which prevented them from receiving the COVID-19 vaccine.

80. Before refusing to hire Plaintiffs due to their religious beliefs, Defendant refused to participate in any sort of bilateral cooperation or interactive process.

81. Defendant cannot prove undue hardship.

82. Defendant's violation harmed and continues to harm Plaintiffs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter the following relief:

a. Declare that Defendant has violated Title VII and ELCRA by failing to engage in the interactive process in response to requests for accommodation to its COVID-19 vaccine mandate.

b. Declare that Defendant has violated Title VII and ELCRA by discriminating against Plaintiffs by failing to provide reasonable accommodations to its COVID-19 vaccine mandate.

c. Award Plaintiffs damages, including pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

d. Award Plaintiffs reasonable attorneys' fees and costs.

e. Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiffs
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: August 23, 2023

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LISA BALLERINI,
TIERRA EMERSON,
on behalf of themselves
and similarly situated individuals,

       Plaintiffs,                Case No.

v.

                                     Hon.

CENTENE CORPORATION,

       Defendant.

---

Noah S. Hurwitz (P74063)
Grant M. Vlahopoulos (85633)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
grant@hurwitzlaw.com

---

## **DEMAND FOR TRIAL BY JURY**

Plaintiffs Lisa Ballerini and Tierra Emerson, on behalf of themselves and similarly situated individuals, by and through their attorneys, Hurwitz Law PLLC, hereby demand a trial by jury in the above-captioned matter for all issues triable.

                                                    Respectfully Submitted,
                                                    HURWITZ LAW PLLC

                                                    */s/ Noah S. Hurwitz*
                                                    Noah S. Hurwitz (P74063)

2

*Attorneys for Plaintiffs*

Dated: August 23, 2023

2